IN THE MATTER OF THE HILTON NEW JERSEY CORPORATION, PETITIONER-APPELLANT, AND IN THE MATTER OF THE GOLDEN NUGGET ATLANTIC CITY CORPORATION, PETI-TIONER-APPELLANT, v. ATLANTIC CITY ELECTRIC COMPA-NY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1985—Decided November 8, 1985.

218

Before Judges FURMAN, PETRELLA and ASHBEY.

*Brian D. Spector* argued the cause on behalf of appellant Hilton New Jersey Corporation (*Ribis, McCluskey, Ruane & Graham,* attorneys; *Connell, Foley & Geiser,* attorneys; *Adrian M. Foley, Jr.,* of counsel; *Kevin J. Coakley, Keith A. Krauss and Jacqueline Chasey* on the brief).

*Stephen M. Holden* argued the cause on behalf of appellant Golden Nugget, Atlantic City Corporation (*Greenberg, Margolis, Ziegler & Schwartz,* attorneys; *Jeffrey D. Light* of counsel and on the brief).

*Daniel P. Duthie,* admitted *pro hac vice,* argued the cause on behalf of respondent (*Holzapfel, Perkins & Kelly,* the New Jersey partner in the firm of *LeBoeuf, Lamb, Leiby & MacRae,* attorneys; *William R. Holzapfel, Jeffrey W. Meyers, Michael W. Youkon and Mr. Duthie* of counsel; *Mr. Holzapfel* on the brief).

*Joseph L. Yannotti,* Deputy Attorney General, attorney for the Board of Public Utilities (*Irwin I. Kimmelman,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Alan S. Pralgever,* Deputy Attorney General, on the brief).

*Diana Johnston,* Deputy Public Advocate, argued the cause for the Division of Rate Counsel (*Amy R. Piro,* Acting Public Advocate, attorney; *Arthur Penn,* Special Counsel, on the brief).

*Nicholas I. Filocco* argued the cause on behalf of appellant-intervenor Bally's Park Place, Inc. (*Waters, McPherson & McNeil,* attorneys).

The opinion of the court was delivered by

FURMAN, P.J.A.D.

Hilton New Jersey Corporation (Hilton) and Golden Nugget Atlantic City Corporation (GNAC) appeal from an order of the Board of Public Utilities (BPU) imposing upon them the cost of extension of Atlantic City Electric Company (ACE) transmission lines to serve their new casino hotel projects in the Atlantic City Marina area. Bally's Park Place, Inc. intervenes in support of Hilton's and GNAC's appeals.

ACE imposed the $3,400,000 cost of new electrical facilities upon Hilton and GNAC, less $200,000 credited against embedded rate base attributable to existing facilities, pursuant to its so-called rate base stabilization policy adopted in 1982. The new policy for the first time shifted the total cost of a line extension from ACE to large general service customers served by the extension. ACE's existing tariff in 1982 exempted customers from any capital contribution if the total cost of an extension was equal to or less than the anticipated revenue for the first three years of operation; it required posting of revenue bonds by customers to be discharged as revenue was generated. ACE's new rate base stabilization policy is applicable only to large general service customers, defined as customers, such as casino hotels, with a peak demand of one thousand kilowatts or more.

Hilton and GNAC, both large general service customers, brought proceedings before BPU under *N.J.S.A.* 48:2–27 challenging the requirement of ACE's rate base stabilization policy that they pay the total cost of the electrical extension to serve their new projects. *N.J.S.A.* 48:2–27 provides:

The board may, after hearing, upon notice, by order in writing, require any public utility to establish, construct, maintain and operate any reasonable

extension of its existing facilities where, in the judgment of the board, the extension is reasonable and practicable and will furnish sufficient business to justify the construction and maintenance of the same and when the financial condition of the public utility reasonably warrants the original expenditure required in making and operating the extension.

In applying *N.J.S.A.* 48:2–27 to the petitions of Hilton and GNAC, the reasonableness and practicability of the extension and the capacity of ACE to finance it are undisputed. The remaining issue is whether the extension would furnish "sufficient business" to justify its construction and maintenance at the sole expense of ACE.

After a plenary hearing, Administrative Law Judge Gindin recommended that BPU order ACE to pay for the extension to serve Hilton and GNAC. He concluded that Hilton and GNAC would provide sufficient business to justify the extension, that ACE's rate of return would not be adversely affected by the expenditure of funds to finance the extension and that ACE lacked authority to impose its rate base stabilization policy without hearing before BPU and BPU approval as a tariff amendment in accordance with *N.J.S.A.* 48:2–21(d).

BPU rejected Judge Gindin's recommendation. It held that the implementation of the rate base stabilization policy was within ACE's authority under the terms of its then existing tariff, was not unduly discriminatory against large general service customers as a class and was "consistent with the Board's commitment to cost-based rates and the ratemaking standards set forth in the Public Utility Regulatory Policies Act, 16 *U.S.C.A.* 2601 *et seq.*" BPU also held that any customer who is dissatisfied or aggrieved by the application of the rate base stabilization policy "has a remedy providing for Board review under *N.J.S.A.* 48:2–27." Before us BPU defends its order based upon the assumption that it shields existing customers from rate increases by minimizing ACE's capital investment.

The cited Federal Act, which is advisory as to State public utility regulatory agencies, sets forth:

Cost of Service—Rates charged by any electric utility for providing electric service to each class of electric consumers shall be designed, to the maximum extent practicable, to reflect the costs of providing electric service to such class, as determined under section 2625(a) of this title.

Whatever the abstract merits of cost-based, rather than revenue-based, allocation of the costs of extending public utility service, that is not the allocation sanctioned by the State Legislature in *N.J.S.A.* 48:2–27. In its opinion on appeal before us, BPU neither overrules in so many words nor seriously questions Judge Gindin's fact finding that revenues from the new services to Hilton and GNAC would be adequate within a relatively short period of time to repay ACE's capital expenditure, without adverse effect on its overall rate of return or the rate of return from the large general service customer class. BPU's sole rationale is that Hilton and GNAC would not generate sufficient business to justify ACE's financing of the extension because other customers, or other large general service customers, would be subsidizing Hilton and GNAC by themselves paying higher rates. Factually, BPU's rationale has tenuous or no support in the record.

■ Legally, BPU's rationale is contrary to *N.J.S.A.* 48:2–27, which both ACE in its then existing tariff and BPU in its order on appeal defer to as an available remedy for a customer charged by a public utility, as Hilton and GNAC were, with the capital cost of an extension. Before BPU and in the courts, the sufficient business requirement of *N.J.S.A.* 48:2–27 has been applied and upheld as a revenue-based standard. *In re Bd. of Fire Commrs., Fire Dist. No. 3, Piscataway Tp.,* 27 *N.J.* 192 (1958); *In re Tp. of Lakewood,* 29 *N.J.Super.* 422 (App.Div. 1954) reh. den. 30 *N.J.Super.* 79 (App.Div.1954); *Deer Path Joint Venture v. Gorden's Corner Water Company,* BPU Docket No. 815–462, February 14, 1983. Any repeal of that standard must be legislative.

■ The Public Advocate argues that *N.J.S.A.* 48:2–27 vests discretionary authority in BPU to grant or deny a utility extension. We disagree. The plain terms of the statute require BPU approval of an extension whenever its three preconditions, including an estimate of sufficient business, are met.

We recognize that, factually, the full brunt of the $3,200,000 capital expenditure may not fall on Hilton and GNAC. Electrical facilities were overbuilt by approximately 8.7%; any new customers tying in during the first five years of operation would contribute a proportionate share of the total cost, reducing Hilton's and GNAC's shares. Such a saving is speculative and, in any event, would not substantially alter Hilton's and GNAC's heavy obligations under the rate base stabilization policy.

In summary, BPU decided the order on appeal in accordance with the policy objective of cost-based rates to minimize capital investment and to shield existing customers from rate increases. By its order it approved the shift of the entire capital cost to Hilton and GNAC, although under *N.J.S.A.* 48:2–27 that obligation may have been ACE's. BPU ignored *N.J.S.A.* 48:2–27, except to hold that it was available as a remedy. BPU failed to weigh or comment on the evidence bearing on whether sufficient business would be generated by the extension to Hilton and GNAC, or to overrule specifically Judge Gindin's determination that the sufficient business standard would be met. It did not weigh the evidence or decide, if ACE financed the extension, the extent of any decline in ACE's rate of return, whether rate increases to other customers would be warranted or whether, at the other extreme, rate decreases would be warranted because the extension would be so profitable.

We hold that Hilton and GNAC were effectively foreclosed from pursuing their remedy under *N.J.S.A.* 48:2–27, which BPU recognized as available, by PBU's failure to consider and decide the issue of sufficient business, specifically what net revenues

were to be reasonably anticipated from the line extension and what the effect of a capital expenditure of $3,200,000 would be on ACE's rate of return in the light of such reasonably anticipated net revenues.

■■ We also disagree with BPU's holding that ACE had authority under the terms of its then existing tariff, to implement its rate base stabilization policy without prior BPU approval. In the light of the new policy's increases in charges for line extensions to large general service customers such as Hilton and GNAC, *N.J.S.A.* 48:2–21(d) mandated a review proceeding upon notice to affected customers, prior to its adoption, *In re Revision of Rates by Redi-Flo Corp.*, 76 *N.J.* 21 (1978). Nevertheless we view the issue as moot because of BPU's consideration and approval of ACE's rate base stabilization policy after a hearing and ACE's incorporation of that policy in its subsequently adopted tariff. We need not and do not pass upon whether, under different circumstances, ACE's rate base stabilization policy might survive a *N.J.S.A.* 48:2–27 challenge by an aggrieved customer charged with the full cost of a line extension. We agree with BPU's holding that the new policy is not unduly discriminatory against large general service customers as a class.

We reverse the order on appeal approving the application of the rate base stabilization policy to Hilton and GNAC. We remand to BPU for further proceedings not inconsistent herewith. We direct that BPU apply *N.J.S.A.* 48:2–27 in favor of Hilton and GNAC if it reaches a fact finding that the cost of the line extension would be recovered out of revenues generated from Hilton and GNAC within what BPU determines to be a reasonable period of time. The experience of the intervening year between the order on appeal and this opinion may be drawn upon. We otherwise affirm. We do not retain jurisdiction.